WITHNELL, *Administrator*, *Appellant*, v. PETZOLD.

DIVISION ONE.

**Monthly Tenancy:** NOTICE TO QUIT: STATUTE. Section 6371 of Revised Statutes of 1889, requiring one month's notice to terminate leases, not in writing, of stores, shops, houses and other buildings in cities, towns and villages, applies to premises used as a park with buildings and fixtures thereon, situated in a city and not leased for purposes of cultivation.

|104 409|
|55a 380|

|104 409|
|58a 114|

|104 409|
|86a 203|

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AMD REMANDED.

*C. S. Taussig* for appellant.

( 1 ) The premises in question contained buildings, and Petzold's tenancy under the statute was, therefore, from month to month. R. S. 1889, sec. 6371. *First.* The doctrine of an implied tenancy from year to year has its origin in the desire to protect farmers who have planted their crops. 1 Wood on Land. & Tenant [ 2 Ed. ] secs. 21, 22, p. 93, and notes ; 1 Taylor on Land. & Tenant [ 8 Ed. ] sec. 55, and note 3. *Second.* The statute in question was passed to correct the evils which had grown out of the adoption of the English

doctrine in this state. (2) Our courts erroneously adopted the English doctrine until it became the established law of this state, without noticing the difference between our statute of frauds and the English statute. *Kerr v. Clark*, 19 Mo. 133; *Hammon v. Douglas*, 50 Mo. 436; 1 Wood on Land. & Tenant [2 Ed.] sec. 15, p. 49, note 2. (3) The rule that a verbal letting created a tenancy from year to year was not absolute, when fully understood, but depended upon the reservation of rent whether annual or for shorter periods, the nature of the property and other circumstances of the case, making it a question, therefore, of the intent of the parties and rendering verbal holdings uncertain, to be proved or disproved in each case by evidence of intention. 1 Taylor on Land. & Tenant [8 Ed.] sec. 55, note 3; 1 Wood on Land. & Tenant [2 Ed.] sec. 21, p. 85, note 2; also, p. 53. It was to remedy these two evils that the statute in question was passed, and it should be construed liberally with a view to accomplish the purpose intended to be served, and to make tenures, which had, theretofore, depended on evidence of intent, fixed and certain. Sedgwick on Stat. [2 Ed.] p. 202; Maxwell on Stat. [2 Ed.] sec. 11, p. 84; Dwarris on Stat., p. 234; *Lynde v. Noble*, 20 Johns. Rep. 80–82; Dwarris on Stat., pp. 239, 240; *Minzer v. Diveling*, 66 Mo. 375; *Connor v. Railroad*, 59 Mo. 285.

*David Murphy* for respondent.

The facts of this case do not fall within Revised Statutes, 1879, section 3078. *Williams v. Deriar*, 31 Mo. 13; *Withnell v. Petzold*, 17 Mo. App. 669; *City v. Laughlin*, 49 Mo. 559.

SHERWOOD, P. J.—Action brought October, 1884, before a justice of the peace for unlawful detainer of a piece of property situated in the city of St. Louis, known as Concordia Park, consisting of about nine acres of

land, covering two city blocks.   The plaintiff had judg-
ment before the justice, but defendant appealed to the
circuit court, where the cause was tried three times.

At the first trial the court instructed the jury to
find for the plaintiff, which was done, and on an appeal
to the court of appeals the judgment was reversed and
the cause remanded ; thereafter the circuit court tried
the cause twice on the theory laid down by the court of
appeals ( 17 Mo. App. 669 ), and from this third trial,
begun on January 18, 1888, which resulted in a verdict
for defendant, the plaintiff appealed to this court.

The property originally was that of John Withnell,
the ancestor of plaintiff, the property having been
devised to plaintiff as remainderman, and to his mother
as tenant for life.   The property was originally held by
lease for three years and nine months, executed in 1875,
and expiring in 1879.   The property was never used nor
leased for farming purposes, nor, indeed, in any respect
for purposes of cultivation.

Among the provisions of the lease, showing this
feature in a conspicuous manner, is the following :
"That, at the expiration of the lease, all the buildings
and improvements that now are, or hereafter may be,
erected on said premises, together with the contents of
the same, including park benches, stands, lamps, gas
fixtures, and all fixtures that may be used for carrying
on a public park, shall revert to, and become the prop-
erty of, John Withnell, excepting only the stock in
trade of the saloon on the premises, and the furniture
contained therein, and the household furniture contained
in the dwelling on the said premises and the shed and
machinery known as the 'flying Dutchman.'"

The improvements consisted of four separate build-
ings, a one-story brick building on the northeast corner,
used as a saloon or bar room ; adjoining it on the north,
a room used for a bowling alley ; north of that, but dis-
connected, a large one-story brick building, about sixty
by one hundred feet, and from forty to sixty feet high,

used as a hall for dancing, concerts and meetings. In this building there was also a bar; next and north of the concert hall is a frame-covered alley-way, which connects the concert hall with a two-story brick building used as a dwelling and for restaurant purposes. The dwelling is a double, two-story brick, and was occupied from 1875 by the defendant and his family as a residence. In addition there were also a music stand, sheds to be used as booths, benches, tables, etc.

Section 6371, Revised Statutes, 1889, is as follows: "A tenancy at will or by sufferance, or for less than one year, may be terminated by the person entitled to the possession by giving one month's notice, in writing, to the person in possession, requiring him to remove; all contracts or agreements for the leasing, renting or occupation of stores, shops, houses, tenements or other buildings in cities, towns or villages, not made in writing, signed by the parties thereto, or their agents, shall be held and taken to be tenancies from month to month, and all such tenancies may be terminated by either party thereto, or his agent, giving to the other party, or his agent, one month's notice in writing of his intention to terminate such tenancy."

The only question worthy of consideration in this cause is the force and effect of the above section. Its provisions are very plain and need no interpreter. That section first became a law in 1869, and was doubtless enacted to remove all controversy as to the effect of leases by parol, and as to leases in writing when such leasing occurs in cities, towns or villages.

The statute is express that "all contracts, * * * for leasing, renting or occupation of stores, shops, tenements or other buildings in cities, towns or villages, not *made in writing,* * * * shall be held and taken to be tenancies from *month to month.*"

The statute makes no exception, and we are authorized to make none; we shall obey its commands. We do not propose by fine-spun distinctions to sanction the

Higgins v. The Mo. Pac. Ry. Co.

creation of leases which that statute in such plain terms forbids. Should we do so, we would be but following that unfortunate precedent set by the English courts, whereby they frittered away the wholesome prohibitory provisions of the statute of frauds, and allowed parol agreements and part performance to be substituted for that which the law said should be put down "*in black and white*." *Kennedy v. Kennedy*, 57 Mo., *loc. cit.* 78; *Berry v. Hartzell*, 91 Mo., *loc. cit.* 137–138.

The doctrine of an implied tenancy had its origin in the desire to protect the agricultural classes; so that he who sows in peace may reap in peace. 1 Wood Land. & Tenant [ 2 Ed.] sec. 2122. But this necessity for protection does not exist in the facts stated here; and we are not, therefore, called upon to rule what we should do were this a case where a large farm is situated within the limits of a city, and a question should arise as to the length of time it had been rented. This case requires no anticipatory utterances on the point. There is a wide divergence between cultivating *growing crops*, and the cultivation of those industries, arts and graces which are peculiar to localities of the sort set forth in this record.

Adhering to the law as it is written, we shall reverse the judgment, and remand the cause with directions to the trial court to make inquiry as to the amount of rents, damages, etc., and enter judgment accordingly. All concur.